IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| MFC Ltd., | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. L-00-22 |
| | § | |
| Wright-Bernet, Inc., | § | |
| | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

Pending is MFC, Ltd.'s Motion for Summary Judgment. (Docket No. 96.) Wright-Bernet has responded, and MFC has filed a sur-reply. (Docket Nos. 97 & 98.)

This motion for summary judgment pertains to Wright-Bernet's counterclaim against MFC. MFC argues that, as a matter of law, Wright-Bernet cannot recover the approximately $700,000 it seeks in consequential damages. Additionally, MFC argues that Wright-Bernet cannot recover on its implied contract and unjust enrichment claims, and that any damages suffered by Wright-Bernet should be limited because it did not cover its losses.

### Consequential Damages

Wright-Bernet did not use the term "consequential damages" in

1

its First Amended Original Counterclaim and Original Cross Claim. (Docket No. 52). However, its claim for damages is essentially one for lost profits that flow as a consequence of MFC's refusal to furnish the ordered tampico. Preliminarily, the parties debate concepts of lost profits and gross profit margin, but this debate may be a semantical one. Leonard Kristal, Wright-Bernet's primary witness regarding this issue, has referred to the damages sought as a loss of "gross profit margin." MFC argues that Wright-Bernet cannot recover under such a theory and that the law only recognizes "lost profits." Kristal testified that the $700,000 figure represents "net sales minus cost of goods sold" and that the figure "purports to convey the gross profit margin that is associated with the brushes that could have been made – would have been made had the fiber for these brushes been made available by [MFC] under the unfilled purchase orders..[.]" (Docket No. 96, Exhibit A, page 76, line 10-17).

MFC argues that this number does not account for all of the expenses incurred in carrying on the business, and thus is legally insufficient. While Wright-Bernet has not provided any assistance in resolving this terminology debate, a review of the record indicates that Kristal did account for operating expenses. In his most recent deposition, Kristal states that the damages model accounted for "standard costs" which include direct labor, raw

material, indirect labor, and general overhead costs like electricity, maintenance, and labor dues. (Docket No. 96, Exhibit A, pg. 105-06.) Therefore, it appears that while the parties use different terminology, they are talking about the same thing.

## Any Evidence of Consequential Damages?

Under Texas law, "[t]he amount of the loss must be shown by competent evidence with reasonable certainty." <u>Holt Atherton Industries, Inc. v. Heine</u>, 835 S.W.2d 80, 84 (Tex. 1992). MFC argues that Wright-Bernet cannot establish lost profits with a reasonable certainty. Wright-Bernet responds by noting that the Texas Supreme Court has stated, "[w]hat constitutes reasonably certain evidence of lost profits is a fact intensive determination." <u>Id.</u> Wright-Bernet contends that summary judgment is not appropriate for a fact-intensive inquiry. However, Wright-Bernet must still adduce <u>some</u> evidence of existing facts to support these damages.

There are various ways to establish lost profits with reasonable certainty. The Texas Supreme Court has held that,

> "...past profits, coupled with other facts and circumstances, <u>may</u> establish a lost-profits amount with reasonable certainty. However, lack of a profit history does not, by itself, preclude a new business from recovering lost future profits. Rather, our focus is on whether damages can be shown with reasonable certainty. This can be done with a profit history <u>or</u> some other

3

objective data, such as future contracts, from which lost profits can be calculated with reasonable certainty." Helena Chemical Co. v. Wilkins, 47 S.W.3d 486, 505 (Tex. 2001)(emphasis in original)(citations omitted).

MFC has pointed to evidence suggesting that Wright-Bernet operated at a loss for three years preceding 1999, the year the alleged breach occurred. According to documents provided by MFC and Wright-Bernet, Wright-Bernet operated at a loss of $472,000, $1,239,000, and $3,562,000 in 1996, 1997, and 1998, respectively. (Document No. 97, Bates No. 000023). Kristal's affidavit states that Wright-Bernet was a profitable business before 1999. Kristal claims that the records indicate it was unprofitable only because Wright-Bernet's parent company, ECKO Group, allocated corporate overhead costs to its subsidiaries and co-mingled operating costs of another business in the income statements of Wright-Bernet. However, neither Kristal nor Wright-Bernet's counsel point to any evidence to support the mere assertion that Wright-Bernet was profitable in the past.

Alternatively, Wright-Bernet could have established lost profits by showing that, but for the alleged breach, it would have sold all of the finished products. Kristal's affidavit simply states that Wright-Bernet would have used all of the materials MFC was supposed to sell it and that Wright-Bernet would have sold all of the brushes and brooms produced from that material. However,

there is no evidence in the record to support that conclusion. Specifically, there is no proof of any contracts Wright-Bernet lost, how much profit would have been made from the contracts, or who would have awarded them contracts. See Holt Atherton, 835 S.W.2d at 85.

"Opinions or estimates of lost profits are competent evidence of lost profits if based on objective facts, figures, or data from which the amount of lost profits can be ascertained." Texaco, Inc. v. Phan, 137 S.W.3d 763, 771 (Tex. App.--Houston [1st Dist.] 2004, no pet.). Wright-Bernet has produced no objective facts to establish this claim. There has been ample time for Wright-Bernet to produce the evidence necessary to establish this claim. Accordingly, the claim for lost profits will be dismissed.

## Implied Contract and Unjust Enrichment

Wright-Bernet appears to argue three alternative positions: (1) the Purchase Orders submitted before the contract expired are covered by the express contract and, therefore, MFC breached the express contract; or (2) if the Purchase Orders are not covered by the express contract, MFC and Wright-Bernet had an implied contract to sell and buy the tampico, which MFC breached; or (3) even if there was no express or implied contract, MFC has been unjustly enriched and Wright-Bernet should recover under a

5

quasi-contract theory.

MFC argues that Wright-Bernet cannot simultaneously pursue a breach of express contract and a breach of implied or quasi-contract. MFC points out that, "[g]enerally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 684 (Tex. 2000). This contention misses the point. The Court does not understand Wright-Bernet to be simultaneously seeking damages under both theories. Rather, they claim an implied contract only in the alternative.

Wright-Bernet appears to argue the concepts of quasi-contract and unjust enrichment interchangeably. However, Wright-Bernet has not provided any evidence or clearly articulated the theory for an unjust enrichment claim.

"Unjust enrichment occurs when the 'person sought to be charged [has] wrongfully secured a benefit or [has] passively received one which it would [be] unconscionable to retain." Villarreal v. Grant Geophysical, Inc., 136 S.W.3d 265, 270 (Tex. App.--San Antonio 2004, pet. denied). There is nothing in the record to support a finding that MFC was unjustly enriched or otherwise benefitted by not selling tampico to Wright-Bernet. Accordingly, the unjust enrichment claim will be dismissed.

Aside from unjust enrichment, Wright-Bernet also appears to argue either an "implied contract" based on the parties' course of dealings or an oral contract based on conversations between representatives of the parties. An implied contact arises from the acts and conduct of the parties, rather than from the parties' express statements of contractual terms. Haws & Garrett Gen. Contractors v. Gorbett Bros. Welding Co., 480 S.W.2d 607, 609 (Tex. 1972) (internal citations omitted). Apart from the fact that mutual assent to an implied contract must be inferred from the circumstances, rather than from express statements, there is little difference between implied and express contracts. See id. A quasi-contract, by contrast, is not actually a contract, but an obligation imposed by courts to ensure a just result. See Fortune Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 683-84 (Tex. 2000) (citing various commentators). The summary judgment record is unclear on whether there is a viable claim for breach of an implied or oral contract. However, with the claim for consequential damages dismissed, it is problematical what other damages can be established by Wright-Bernet.

## Cover

MFC again argues that Wright-Bernet's recovery should be limited because it should have either sought tampico from another

supplier or purchased the tampico from MFC at the higher price offered by them, and sued for the difference in price.

The Court has previously ruled on this argument in its Memorandum of February 17, 2004, and MFC has presented no new evidence or authorities that warrant revisiting this issue.

## Conclusion

MFC's motion for summary judgment is GRANTED to the extent discussed in this Memorandum. This case is one of the oldest cases on the Court's civil docket, and it must come to an end. The parties filed a joint pretrial order almost four years ago, on August 31, 2001. (Docket No. 56). The parties are DIRECTED to confer forthwith and submit any necessary revision of the joint pretrial order no later than Monday, October 17, 2005.

DONE at Laredo, Texas, this 28th day of September, 2005.

_____
George P. Kazen
United States District Judge